IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROGER and ANN BLASER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-2422-JWL |
| ) | |
| MT. CARMEL REGIONAL MEDICAL ) | |
| CENTER, INC. and JOHN DOE and/or ) | |
| JANE DOE, ) | |
| ) | |
| Defendants. ) | |

### SUGGESTIONS IN OPPOSITION TO MOTION TO QUASH SUBPOENA *DUCES TECUM* AND FOR PROTECTIVE ORDER

COME NOW Plaintiffs, Roger and Ann Blaser, and for their Suggestions in Opposition to Defendant Mt. Carmel Regional Medical Center, Inc.'s Motion to Quash Subpoena *Duces Tecum* and for Protective Order state as follows:

**A.    Statement of Facts:**

On January 17, 2007, Plaintiffs' counsel, Rick Temple, prepared and issued Subpoenas *Duces Tecum* to the following three (3) third-party witnesses:

1.  Pittsburg, KS Police Department;

2.  Kansas State Board of Healing Arts; and

3.  Kansas University (KU) CRNA Program.

All three (3) subpoenas provided a document production date of February 2, 2007. In the cover letter attached to each Subpoena, counsel stated:

> You are not required to present a custodian of records for deposition. Rather, the Subpoena only requires that the documents requested be produced at the place, date, and time noted. Should you desire to avoid

appearing on February 2, you may send copies of the documents to me prior to that time, and I will provide a duplicate copy to opposing counsel.

On the same day of sending out the Subpoenas, Plaintiffs' counsel, orally and by letter sent both by e-mail and regular mail, informed Defendant Mt. Carmel's attorneys that he was issuing the three (3) Subpoenas *Duces Tecum*, who they were being issued to, and the date for response.  Attorney Temple also notified Defendant Mt. Carmel's attorneys that he would provide them copies of the Subpoenas with a copy of all documents produced in response to each Subpoena.  No objection was voiced.

Throughout the next two weeks, counsel for the parties were involved in almost daily discussions in regard to various discovery matters, including an agreed proposed Protective Order and medical releases from the Plaintiffs.  At no time was any objection made to the Subpoenas, or the procedure being used.

On January 22, 2007, Attorney Temple received a packet of documents from the Pittsburg Police Department in response to the Subpoena.  The packet included a diskette with photographs of the scene involved.  Counsel immediately made arrangements to have the diskette copied for opposing counsel.  Copies of all documents (including the Subpoena) and the diskette were obtained and mailed to Defendant Mt. Carmel's attorneys the next day, January 23, 2007.  Again, no objection was voiced by Defendant Mt. Carmel.

On January 26, 2007, general counsel for the Kansas Board of Healing Arts called Attorney Temple and requested an extension to respond to the Subpoena until February 9, 2007.  The extension was granted, and communicated to Defendant Mt. Carmel's

counsel. Again, no objection was voiced by Defendant Mt. Carmel to the Subpoenas or procedure being used.

On February 1, 2007, Attorney Temple received a packet of documents from the KU CRNA Program in response to the Subpoena. Copies of all documents (including the Subpoena) were immediately made, and mailed to Defendant Mt. Carmel's counsel the very next day, February 2, 2007. It was on this day, while said copies were being made, that Attorney Temple received a telephone call from Defendant Mt. Carmel's counsel for the first time complaining of the Subpoenas and procedures, and alerting Attorney Temple that a Motion to Quash was being filed that day.

On February 5, following receipt of the Motion to Quash, Attorney Temple faxed a letter to Defendant Mt. Carmel's counsel which addressed the issues raised and included the following requests:

> In the future, I would sincerely hope you would contact me with any questions or concerns <u>before</u> we bother the Court with the issue. I think you will find me very easy to work with, and, if we cannot work it out, then we can at least agree on a procedure to bring the matter before the Court without having to make allegations against one another.
>
> Finally, so as not to raise any more issues like those raised in your Motion, attached is a copy of the Subpoena Duces Tecum I issued on January 17 to the Kansas Board of Healing Arts. As I mentioned to you last week, counsel for the Board called me and requested an extension until this Friday, February 9, to respond. As you will note, I also signed this Subpoena. If that is a problem with you, I can have my local counsel re-issue and re-serve the Subpoena, and extend the response deadline. Please let me know immediately if you would like such action on my part. If not, I will forward you a copy of all documents received in response to the Subpoena upon their receipt.

Defendant Mt. Carmel did <u>not</u> respond with any objection to the procedures. Documents were later received from the Kansas Board of Healing Arts in response to the Subpoena, and copies immediately forward to Defendant Mt. Carmel's counsel without objection.

**B.      <u>Issues Raised in Motion to Quash</u>:**

      **1.      <u>Procedural Issues</u>:**

In its Motion to Quash, Defendant Mt. Carmel complains of two (2) procedural issues: (1) failure to receive a copy of the Subpoenas before they were served; and (2) that Plaintiffs' local Kansas counsel did not sign the Subpoenas.

As to the first point, Defendant Mt. Carmel's attorneys never at any time informed Plaintiffs that they wanted a copy of any of the Subpoenas before Plaintiffs received the documents in response. However, if such request would have been made, Attorney Temple would have immediately faxed them a copy.

As to the second point, because the Subpoenas were not a "pleading or paper" required to be filed with the Court, Plaintiffs did not believe that local counsel was required to sign the Subpoenas as alleged in Defendants' Motion. Rather, Attorney Temple reviewed Rule 45(a)(c), and, because he had been authorized to practice before the Court as to this case, believed he was authorized to sign the Subpoenas. However, had Defendant Mt. Carmel's attorneys notified Attorney Temple that they had an issue with his signing the Subpoenas as an officer of the Court, the issue could have been easily addressed with Attorney Temple immediately having Plaintiffs' local counsel re-issue and re-serve the Subpoenas, including extending the date.

4

In summary, Plaintiffs' counsel are embarrassed that these procedural issues are even before the Court wasting judicial resources. Rather, a simple mentioning of the issues during the numerous calls between counsel during the time period in issue would have immediately resolved the issues and avoided this portion of the Motion to Quash. However, Defendant Mt. Carmel went along with the procedure, accepted the benefits of the procedure, and then changed its mind and raised the issue to bolster the substantive issues in its Motion to Quash. Plaintiffs respectfully assert Defendant Mt. Carmel's objection in this regard should be rejected.

**2.     Relationship Between Supervising Instructor and Student:**

The Subpoena to the KU CRNA Program requested, at No. 4:

Any and all files, documents, and/or records (including electronic records) relating to the investigation of CRNA Instructor Aaron Burd's relationship with CRNA student Julie (Dent) (Papish) Burd.

KU did not complain, but, rather, produced a one-page document. However, Defendant Mt. Carmel complains in its Motion to Quash that such information "has nothing to do with the death of Racher Blaser and her apparent use of drugs in a hospital call room. There is no evidence suggesting Aaron Burd or Julie Burd were within the hospital or in contact with the decedent on the night of her death." Motion to Quash, at p. 7. Plaintiffs fail to understand how Defendant Mt. Carmel can in good faith even make a claim that the relationship is not relevant to the issues of the lawsuit. Such allegations are simply not correct.

The Complaint alleges, and the evidence will reflect, that, just prior to her death, Rachel Blaser was having an anxiety attack, and sought medication for relief. Witnesses

5

are expected to testify to the following facts relating to the involvement of Rachel's supervising CRNA (Aaron Burd) and her best friend and co-student (Julie Dent Papish Burd) in the four (4) days immediately prior to her death:

| | |
|---|---|
| September 2004 | Rachel Blaser confides to her parents, Roger and Ann Blaser, that the CRNA students sometimes "self-medicate" one another, and that CRNA Instructor Aaron Burd is having an affair with CRNA student, Julie Papish, both of whom are married. |
| September 29, 2004 (Wednesday) | Rachel Blaser has dinner with her parents during which she mentions the following subjects:<br><br>She does not like the relationship with Lynn Dent, and is planning to move out.<br><br>She would like to get back into a relationship with Justin Reading, and they are going to start spending some time together.<br><br>A vein in her left arm had been "blown"/bruised by fellow CRNA student Julie Papish giving her an injection. |
| September 30, 2004 (Thursday) | Rachel Blaser goes to lunch with CRNA instructor Aaron Burd.<br><br>(Afternoon) Rachel Blaser has a discussion with CRNA Val Johnson regarding her desire to rekindle her relationship with Justin Reading. Rachel also tells Val about the affair between Aaron Burd and Julie Papish. |
| Beginning October 2004 | Aaron Burd's car seen by CRNA Val Johnson at Julie Papish's house overnight many nights. |
| October _?_, 2004 | CRNA Val Johnson reports to her boss, Dr. Frank Petrola, of the alleged affair between Aaron Burd and Julie Papish. Dr. Petrola dismisses the report as unbelievable, based on his prior relationship with Aaron Burd. |

6

| | |
|---|---|
| October 1, 2004 (Friday) | Aaron Burd and Julie Papish spend evening at home of Rachel Blaser and Lynn Dent, "partying" to the extent that Burd tells his wife he cannot drive home until the middle of the night (approximately 2:30 a.m.). |
| October 2, 2004 (Saturday) | Aaron Burd talks with Rachel Blaser. |
| October 3, 2004 (Sunday) | Aaron Burd attempts to call Rachel Blaser but does not reach her. |
| | Julie Papish separates from her husband, Frank Papish. |
| October 4, 2004 (Monday) | |
| (7:00 a.m.) | Rachel Blaser begins her shift at Mt. Carmel Hospital. Julie Papish works with Rachel. |
| (Afternoon) | Rachel Blaser is seen crying. She has a conversation with Dr. Phil Cedeno wherein she requests that he prescribe something for her anxiety. Dr. Cedeno refuses to prescribe a controlled substance, and tells Rachel he is going to talk with Dr. Frank Petrola. |
| (3:19 p.m.) | Julie Papish begins 75-minute cell phone conversation with Aaron Burd. |
| October 5, 2004 (Tuesday) | |
| (2:10-2:20 a.m.) | Rachel Blaser found deceased in the student on-call sleep room by CRNA Wendi Anselmi. Door locked either from inside by hand or from outside with key. |
| (5:00 a.m.) | Coroner of Crawford County pronounces Rachel Blaser deceased, estimating that she had been deceased for approximately 12 hours. |

| | |
|---|---|
| November 2004 | Aaron Burd's wife (Sarah Burd) receives calls from co-workers (and/or their spouses) of Aaron telling her that Aaron was having an affair with Julie Papish. |

These very allegations are included in the Complaint, at Paragraph Nos. 17 through 23. In addition, CRNA Burd's conduct, including his relationship with Student Julie Dent Papish Burd, is part of the alleged cause of action, at Paragraph Nos. 53 through 56.

Second, one of Defendant Mt. Carmel's factual defenses in this case relates to its claim that the door to the room in which Rachel's body was found was locked, and only three (3) keys existed. However, CRNA Aaron Burd had access to one of those three (3) keys, CRNA Student Julie Dent Papish Burd was with Rachel Blaser on the afternoon of her death, and Julie was on an extended cell phone call with CRNA Burd beginning at 3:19 p.m. on the day of Rachel's death.

Third, during several investigations into Rachel's death by governmental agencies, including the Kansas Nursing Board, and the KU CRNA Program, the relationship of CRNA Instructor Aaron Burd and CRNA student Julie Dent Papish Burd has been at issue. During such investigations, both have vehemently denied such relationship, notwithstanding the overwhelming evidence to the contrary. Therefore, the credibility of these two critical witnesses is crucial to this case.

Finally, relevancy as to the admission of such as evidence is <u>not</u> the issue here. Rather, the only issue now before the Court relates to whether Plaintiffs have the right to <u>discovery</u> (as opposed to admissibility into evidence) as to such relationship.

In summary, the relationship of Rachel Blaser, her supervising CRNA, and her best friend and co-student, including corresponding conduct in the days just before Rachel's death, is clearly relevant to the events surrounding her death. Plaintiffs understand why Defendant Mt. Carmel does not want public the fact that one of its CRNA instructors was having a relationship with one of the CRNA students he was supervising, and that the relationship was ongoing and discussed in the days just prior to Rachel Blaser's death. However, such issues are clearly relevant to this case.

### 3. Other KU CRNA Students with Drug Abuse Problems:

In the Subpoena to the KU CRNA Program, Request No. 5 seeks the following the documents:

> Any and all files, documents, and/or records (including electronic records) relating to the notification, awareness, reports, and/or investigation by Kansas University of any CRNA students in the Kansas University CRNA Program who have been reported as either using drugs on a recreational and/or abusive basis, and/or dying due to an overdose of drugs.

Defendant Mt. Carmel complains that such request should be limited in time, and violates the privacy interests of the individuals involved.

First, it should be noted that the objections are not being made by the KU CRNA Program, but, rather by Defendant Mt. Carmel. Plaintiffs assert that Defendant Mt. Carmel has no interest or standing to object.

Second, there is no allegation that compliance with such request would be burdensome, in that counsel for Mt. Carmel has informed Plaintiffs' counsel that there are only three (3) individuals involved. Accordingly, production of such files would be very easy.

9

Third, how can Plaintiffs evaluate relevancy as to the number and timeframes when such information is not known? Rather, the basis of Defendant Mt. Carmel's objection supports the very purpose of discovery.

Fourth, as to the privacy interests of the three (3) or so individuals involved, the KU CRNA Program, in its production to Plaintiffs in response to the Subpoena, provided a copy of a letter that it sent in January 2007 to the individuals involved, outlining to them their right to object, on or before February 2, 2007. The letter stated:

> If you do not object in the form of a Motion to Quash, <u>we will be required to turn your records</u> over to the attorney requesting the subpoena on or before February 2, 2007. [Emphasis added.]

None of those individuals have objected. In fact, one of the individuals wrote a letter to the undersigned, with a copy to the KU CRNA Program, saying that she had no objection. Accordingly, the "privacy" arguments raised by Defendant Mt. Carmel are without merit.[1]

Finally, as has been previously provided to the Court, Plaintiffs are willing to enter into a Protective Order limiting disclosure of any legally protected confidential information learned in discovery in this case.

### 4. <u>Arrangements Between KU and Defendant Mt. Carmel:</u>

In its Motion to Quash, Defendant Mt. Carmel also raises objections to Plaintiffs' Request No. 6 to the KU CRNA Program. That Request reads:

---

[1] In addition, under the Family Educational Rights and Privacy Act (FERPA), cited by Defendant Mt. Carmel, a lawfully issued Subpoena and/or an order from the Court allows KU to release such records. *See* CFR § 99.31(a)(9).

> Any and all files, documents, and/or records (including electronic records) relating to the policies, procedures, protocols, oversight, agreements, and/or arrangements between the Kansas University CRNA Program and the Mt. Carmel Regional Medical Center for KU CRNA students (including previous students), as part of their CRNA Program, to train and/or perform services at the Mt. Carmel Regional Medical Center in Pittsburg, Kansas.

However, in documents provided to date by they KU CRNA Program, it appears that all such documents have been produced. Accordingly, the objection outlined by Defendant Mt. Carmel is moot.

Even if the objection was not moot, the KU CRNA Program did not claim that compliance with such request was "burdensome." Rather, it was Defendant Mt. Carmel, not involved in the required production, who claimed "tremendously burdensome." But Defendant Mt. Carmel has no interest or standing to make such a claim.

**C.      Conclusion:**

For the above-outlined reasons, Plaintiffs respectfully request the Court to deny Defendant Mt. Carmel's Motion to Quash, and enforce the Subpoena *Duces Tecum* addressed to the KU CRNA Program.

    Respectfully submitted,

    **SKEPNEK FAGAN MEYER & DAVIS, P.A.**

    By     /s/ Mark T. Emert
        Mark T. Emert, Esq.
        Kansas Bar No. 22186
        900 Massachusetts Street, Suite 601
        Lawrence, KS  66044
        Telephone No.:  (785) 331-0300
        Facsimile No.:   (785) 331-0303

                                **LAW OFFICES OF RICK E. TEMPLE, LLC**

                                By        /s/ Rick E. Temple
                                        Rick E. Temple, Esq.
                                          Missouri Bar No. 33257
                                          1358 E. Kingsley, Suite D
                                          Springfield, MO  65804

                                          Telephone No.:  (417) 877-8988
                                          Facsimile No.:   (417) 877-8989

Attorneys for Plaintiffs

DATED:  This 16th day of February, 2007.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing Suggestions in Opposition to Defendants' Motion to Quash Subpoena *Duces Tecum* and for Protective Order was served upon the following individuals, to-wit:

> Janet M. Simpson, Esq.
> Courtney H. Mikesic, Esq.
> Holbrook & Osborn, P.A.
> Commerce Plaza II
> 7400 West 100th Street, Suite 600
> Overland Park, KS 66210

by electronic notice to said individuals, on this 16th day of February, 2007.

/s/ Mark T. Emert